United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| GERALDINE MCEACHERN as prospective adoptive mother and next friend, | ) ) ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 14-12553-NMG |
| INTER-COUNTRY ADOPTION BOARD OF THE REPUBLIC OF THE PHILIPPINES, | ) ) ) |  |
| Defendant. | ) ) |  |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of a child adoption dispute between plaintiff Geraldine McEachern ("McEachern") and the Inter-Country Adoption Board of the Republic of Philippines ("ICAB" or "the Agency").[1] Plaintiff filed her complaint in Suffolk County Probate and Family Court ("the Probate Court") seeking to enjoin the Agency from removing or causing to be removed Rica Roxas from her pre-adoptive home. The Agency belatedly removed the case to this Court.

Pending before the Court are 1) plaintiff's motion to remand, 2) defendant's motion to dismiss, 3) plaintiff's motion to strike defendant's motion to dismiss and 4) plaintiff's

---

[1] The parties agree that ICAB is an agency or instrumentality of the government of the Republic of the Philippines.

-1-

motion for leave to file oppositions, if necessary, to defendant's motion to dismiss and any papers the Court interprets as a request to remove the default currently against the Agency. For the reasons that follow, plaintiff's motion to remand will be allowed. Defendant's motion to dismiss, plaintiff's motion to strike and plaintiff's motion for leave to file oppositions, if necessary, will be denied as moot.

I. **Background**

In April, 2012, McEachern traveled to the Philippines for the purpose of adopting both Rica Roxas ("Rica"), born December 12, 2001, and her half sibling Genevie Roxas ("Genevie"), born March 14, 1996. Although Rica was excited to be adopted, Genevie remained detached and unwilling to leave the country. Plaintiff expressed her concerns to the Agency representative but still brought both of them back to the United States for prospective adoption.

Approximately six months into the placement, Genevie began acting out and indicated to the plaintiff that she did not want to be adopted. Genevie was allegedly verbally and physically abusive to Rica as well. Plaintiff informed a representative at Pearl S. Buck International, the United States Hague Accredited Agency that facilitated the placement of Rica and Genevie with the plaintiff, that she was uncomfortable going forward with the adoption of Genevie. Genevie was subsequently removed from

plaintiff's home and placed in foster care.  McEachern alleges that after Genevie left the home, Rica thrived and improved drastically in school.  She further alleges that experts concluded that placing Rica in another home with Genevie would be extremely damaging to Rica.

In February, 2013, plaintiff requested that she be allowed to adopt only Rica.  The Agency denied that request due to their determination that the siblings be placed together for their best interests.  The Agency then informed plaintiff that it had chosen a family in New York to accept the placement of both girls.

On August 29, 2013, plaintiff filed suit in the Probate Court seeking to enjoin the Agency from removing Rica from her home.

On September 12, 2013, the Probate Court issued summonses for the Agency and two of its partner adoption agencies.  Plaintiff attempted to serve the Agency through a process server that day at the following address: "Inter-Country Adoption Board c/o Philippine Consulate General ATN: Legal Section 556 5th Avenue, New York, NY 10036-5095."  Service was refused.

The following week, the complaint and summons were allegedly served on ICAB via Federal Express to the Philippine Consulate General, Inter-Country Adoption Board, "Legal Section,

556 5th Avenue, New York, NY 10036-5095." An agent signed for the delivery.

In October, 2013 the Probate Court held a hearing on the plaintiff's motion for temporary restraining order and preliminary injunction. The day before the hearing, the Agency had filed a Philippine Consulate Request for Pro Se Appearance of Felipe Carino and Request for Telephonic Access to the hearing. The Court ultimately issued an order restraining the Agency and their agents from removing or causing to be removed Rica from her pre-adoptive home.

In February, 2014, at the Agency's request, McEachern, her attorney and an Agency representative and his attorney met at the offices of the plaintiff's attorneys. The United States Department of State ("the State Department") was represented via conference call. At that meeting, the parties discussed the resolution of the adoption of Rica. The Court presumes that the meeting ended without such a resolution.

### B. Procedural history

McEachern filed her complaint in the Probate Court in August, 2013. In May, 2014, plaintiff filed a Request for Entry of Default against the Agency and a motion for an expedited default judgment hearing. On June 4, 2014, the Probate Court entered the default and scheduled the hearing for June 19, 2014.

Two days before the default judgment hearing, the Agency removed the case to this Court. The Court held a hearing on all of the pending motions in October, 2014.

## II. **Plaintiff's motion to remand**

Plaintiff moves for this Court to remand the case to the Probate Court. She contends that she served the defendant via Federal Express in accordance with 28 U.S.C. § 1608(b), which governs the service upon an agency or instrumentality of a foreign state. The Agency failed to file its Notice of Removal, however, until nine months after the alleged service upon it.

### A. **Service of process**

Pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq., service can be made

> if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> ...
>
> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b)(3).

Plaintiff asserts that she complied with service requirements pursuant to § 1608(b)(3)(C). The Probate Court

-5-

signed and issued a summons, which was served along with the complaint in accordance with the Massachusetts Rules of Civil Procedure Rule 4.  Under Rule 4, service outside of Massachusetts can be accomplished "by any form of mail addressed to the person to be served and requiring a signed receipt."

The Agency, without addressing § 1608(b)(3)(C), contends that service did not comply, substantially or otherwise, with § 1608(b)(3)(B) because the letter purporting to make service was from plaintiff's counsel rather than from the Clerk of the court.  Furthermore, service was made at the Philippine Consulate General Office in New York City and not to the Agency in the Philippines.

Even if she did not strictly comply with service requirements, plaintiff asserts that service on an agency or instrumentality of a foreign state under Section 1608(b) requires only "substantial compliance" coupled with actual notice. See Semtek Int'l, Inc. v. Info. Satellite Sys., 2012 WL 831475, at *5 (D. Mass. Mar. 9, 2012) (citing Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153-54 (D.C. Cir. 1994) (collecting cases)); Magness v. Russian Fed'n, 247 F.3d 609, 617 (5th Cir. 2001) (recognizing that the "vast majority of case law" holds that substantial compliance under section 1608(b), coupled with actual notice, is sufficient to meet the statutory

service requirements for instrumentalities of a foreign state). Courts have generally held that Section 1608(b)

> may be satisfied by technically faulty service that gives adequate notice to the foreign state...[because] Congress was there concerned with substance rather than form[.]

Transaero, 30 F.3d at 153-54.

McEachern asserts that the Agency received actual notice of the suit, as demonstrated by the filing of a request to "enter [an] appearance pro se" and a request for telephonic access to an October, 2013 hearing with the Probate Court by a Consul for the Philippine Consulate General in New York representing the Agency two weeks after signing for the delivery of the complaint and summons. Furthermore, on November 13, 2013, the Agency filed an appearance in the related guardianship matter before the same Probate Court judge and actively participated in that matter. The Court finds that McEachern has sufficiently demonstrated that the Agency had actual notice of the instant case.

In light of the foregoing, the Court concludes that the plaintiff substantially complied with service of process requirements under 28 U.S.C. § 1608(b) and provided actual notice of the lawsuit to the defendant.

**B. Removal**

It is undisputed that the Agency removed the action to this Court 271 days after constructively receiving the summons and complaint via Federal Express. Plaintiff contends that the Agency not only failed to demonstrate good cause for the late removal, it has acted in bad faith and therefore the case should be remanded to the Probate Court.

Although 28 U.S.C. § 1446(b)(1) requires that a case be removed within 30 days of service of process, defendant contends that the time period was never triggered due to improper service of process. The Agency further asserts that for removal of actions against foreign states, time limitations "may be enlarged at any time for cause shown" and that the insufficient service provided good cause. 28 U.S.C. § 1441(d).

Having already determined that the defendant was properly served, the Court rejects the defendant's explanation for its untimely removal. Accordingly, the case will be remanded to the Probate Court.

**C. Subject matter jurisdiction**

The Agency contends that irrespective of procedural deficiencies by either party, the case should not be remanded because the Probate Court lacks subject matter jurisdiction over the Agency. Under FSIA, the Agency is "immune from the jurisdiction of the courts of the United States and of the

States," subject to a number of exceptions. 28 U.S.C. § 1604. Plaintiff alleges that the Probate Court has jurisdiction over the Agency under the commercial activity and tortious act exceptions provided in 28 U.S.C. § 1605(a)(2) and § 1605(a)(5). Subsection (a)(2) of § 1605 allows actions

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States...

Subsection (a)(5) of the same statute allows actions

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment...

Defendant contends that international adoption is not a commercial activity of the Philippine government and that the claims asserted by the plaintiff do not relate to personal injury or property damage.

The Court disagrees and concludes that this suit falls under the commercial activity exception pursuant to 28 U.S.C. § 1605(a)(2). In assessing whether a certain transaction or course of conduct is commercial in character, courts look to the

"nature" of the activity rather than its "purpose." 28 U.S.C. § 1603(d). Thus

> the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce."

Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (emphasis in the original) (citation omitted).

While the Court acknowledges that the matter of a foreign adoption may not be a profit-making endeavor for the government of the Philippines and that an act of adoption is not primarily a commercial activity, the process of adoption, which entails numerous contracts and often an exchange of money, undoubtedly affects commerce. The Court therefore concludes that both the Probate Court and this Court have subject matter jurisdiction over the instant case.

### III. **Other pending motions**

In conjunction with its opposition to the plaintiff's motion to remand, the Agency filed a motion to dismiss plaintiff's claims for 1) insufficiency of service pursuant to Rule 12(b)(5) and 2) lack of personal jurisdiction over the Agency pursuant to Rule 12(b)(2). Plaintiff has also filed a motion to strike defendant's motion to dismiss and a motion for

leave to file, if necessary, an opposition to the Agency's motion to dismiss and an opposition to any of the papers the Agency previously filed that the Court may interpret as a request to remove the default currently entered against it.

The Court has concluded herein that the case will be remanded to the Massachusetts Probate Court. Accordingly, the other pending motions will be denied as moot.

### ORDER

For the foregoing reasons,

1) plaintiff's motion to remand (Docket No. 5) is **ALLOWED**;

2) the motion to dismiss by ICAB (Docket No. 7) is **DENIED AS MOOT**;

3) plaintiff's motion to strike defendant's motion to dismiss (Docket No. 9) is **DENIED AS MOOT**; and

4) plaintiff's motion for leave to file oppositions, if necessary (Docket No. 12) is **DENIED AS MOOT.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 26, 2014